Maxine TODD, Plaintiff,

v.

**AETNA HEALTH PLANS, Citibank, N.A., Defendants.**

**No. 97 CV 443(NG).**

United States District Court, E.D. New York.

Aug. 6, 1999.

Michelle Hauser, New York City, for plaintiff.

Michael Bernstein, Sedgwick, Detert, Moran & Arnold, New York City, for defendant.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, plaintiff Maxine Todd seeks review of the denial of her claim for disability benefits under an employee Disability Benefits Plan issued by defendant Citibank, N.A. ("Citibank") and administered by defendant Aetna Life Insurance Company ("AETNA") (named here as Aetna Health Plans). Plaintiff also brings related claims of illegal termination and intentional infliction of emotional distress. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) to dismiss plaintiff's claims in their entirety. Defendants contend that the denial of plaintiff's claim for disability benefits was not arbitrary and capricious and that her claims of illegal termination and intentional infliction of emotional distress are preempted by ERISA.

### Facts

Unless otherwise indicated, the following facts are not in dispute.

Plaintiff Maxine Todd worked for defendant Citibank as a customer service repre-

sentative from 1977 through 1979, when she resigned. Citibank rehired her in 1981, and plaintiff remained employed by Citibank until November 30, 1996. As a Citibank employee, plaintiff was entitled to benefits under an employee benefit plan issued by Citibank and administered by Aetna. According to the administrative services contract between Citibank and Aetna, Citibank delegates to Aetna "the discretionary authority to make determinations on behalf of [Citibank] with respect to disability certifications under the Plan." Section 5(A), Administrative Services Contract, Defs.Ex. H at 4. Article I of the Long–Term Disability Benefits Plan of Citibank defines "disability" as follows:

[A] mental or physical condition which the Claims Administrator/Fiduciary determines:

(i) prevents the Participant from performing each and every material duty pertaining to his or her regular occupation (and after 24 consecutive months of such condition prevents the participant from engaging in each and every occupation or employment for wage or profit for which Employee is reasonably qualified by reason of education, training or experience or may reasonably become qualified)

Long Term Disability Benefits Plan, Defs. Ex. I at 1–2.

In May 1996, plaintiff held the position of sales officer. Her responsibilities included opening accounts, granting loans, and assisting customers with Citibank's products and services. Plaintiff began a two week approved vacation in mid-May, but did not return to work as scheduled. On the day she was to return to work, plaintiff contacted her supervisor and informed him that she could not return to work due to illness. As a result, Citibank placed her on disability leave status.

When notified by Citibank of plaintiff's illness, Aetna contacted plaintiff on June 11, 1996 and mailed to her on June 17, 1996 a Notice and Proof of Claim for Dis-

ability Benefits form. By letters dated July 1 and 2, 1996, Aetna advised plaintiff that it had not yet received either the claim form or the necessary medical information from her physician certifying her disability. Plaintiff then filed her claim form dated July 2, 1996, which listed her disability as migraine headaches and high blood pressure. Plaintiff's doctor, Dr. Leslie Theodore, certified on the claim form that plaintiff suffered from "uncontrolled hypertension, migraine headaches and anxiety attacks." Defs.Ex. N. Dr. Theodore indicated that she would re-evaluate plaintiff in four weeks to assess whether she could return to work. Dr. Theodore also forwarded to Aetna on July 11, 1996 a report of the MRI performed on plaintiff by Dr. Randall James. The report indicated that there were "no areas of abnormal signal intensity" within the brain, but that there was a small area of intermediate to decreased signal intensity. Defs.Ex. O. Based upon the information provided in the claim form and the MRI report, Aetna denied plaintiff's claim for disability benefits by letter dated July 26, 1996.

Plaintiff appealed Aetna's denial by letter dated July 30, 1996, and submitted the following additional medical information: a July 31, 1996 letter from Dr. Theodore and Dr. Theodore's office notes from May 28, 1996 to July 23, 1996. The July 31, 1996 letter from Dr. Theodore states as follows:

> This is to certify that Ms. Todd has been under my care since 05/28/96 for worsening migraine headache and hypertension. Recently she started experiencing frequent episodes of memory loss. A recent MRI of the brain shows an area of intermediate to decreased signal intensity which is actually being investigated. She is currently being followed jointly by a Neurologist.
>
> She is advised to remain home with bed rest and to follow-up with our office until further notice.

Defs.Ex. Q at 6.

In its August 7, 1996 letter acknowledging receipt of plaintiff's appeal and the additional medical information, Aetna advised plaintiff that any other information she wished to have reviewed on appeal must be submitted within twenty days from the date of the letter. Plaintiff responded by providing medical information from her neurologist, Dr. Antenor Vilceus, for the time period of May 28, 1996 to August 8, 1996. Each of the four reports from Dr. Vilceus noted that plaintiff's chief complaint was of severe headache which was described as "intolerable." Of the physical examinations conducted of plaintiff, all of the results were normal. The persisting conditions noted in these reports included hypertension, the beginning of self-described memory loss, feelings of anxiety, experiencing unusual smells, and feelings of depression. Dr. Vilceus prescribed Pamelor for plaintiff's depression and Inderal, Imitrex and Midrin for her headaches.

In a letter dated August 30, 1996, Aetna upheld its previous denial of plaintiff's claim. The documents reviewed in consideration of plaintiff's appeal included plaintiff's August 6, 1996 appeal letter, Dr. Theodore's July 31, 1996 letter, the laboratory report, office notes from May 28, 1996 to July 23, 1996, and the MRI report. Aetna's letter stated in relevant part:

> A disability is defined as a mental or physical condition which the Claims Administrator/Fiduciary (Aetna) determines prevents the participant from performing each and every material duty pertaining to his or her regular occupation.
>
> Your file was reviewed by an Aetna Medical Director. Migraine headaches are rarely continuously disabling and do not usually last more than 24 hours. Neither the MRI nor any information provided by your physician demonstrate a medical need for a full disability. Based upon our review of the request and the information submitted, we are continuing to uphold the denial.

Defs.Ex. T.

Plaintiff appealed the second denial in a letter dated September 10, 1996, stating

that she does "not agree with your analysis that migraines are not disabling," and that she suffered the additional conditions of "serious hypertension," problems with short term memory and depression. Defs. Ex. U. Dr. Theodore forwarded an update on plaintiff's condition to Aetna on September 13, 1996. Dr. Theodore confirmed that plaintiff had been under her care since May 28, 1996 and suffered from "worsening migraine headache and hypertension." The doctor further noted that plaintiff recently began experiencing "frequent episodes of memory loss" and had been diagnosed as suffering from a "major depression" by a psychiatrist. She advised that plaintiff remain home with bed rest. *See* Defs.Ex. V.

By letters dated October 2, 1996 and November 1, 1996, Aetna advised plaintiff that additional time was required to process her second appeal. Both letters stated that she would receive a final determination no later than 30 days from the date of the letter. When plaintiff had not yet received a final determination by December 16, 1996, she wrote another letter to complain about the delay and to advise Aetna that she was also seeing Dr. Enide Adolphe, a psychiatrist. Plaintiff attached to her letter a consultation request form from Dr. Theodore to Dr. Adolphe, who found that plaintiff suffered from severe, major depression and recommended anti-depressants. Plaintiff further stated in her letter that she went to therapy once a week and that she was experiencing significant financial difficulty resulting from her inability to receive either unemployment insurance or disability benefits due to her ongoing status of being on an unpaid leave of absence from Citibank.

Defendants state that Aetna did not receive plaintiff's December 16, 1996 letter with the enclosures until after an Aetna Medical Director reviewed plaintiff's file on December 20, 1996, thereby closing the administrative record. Nonetheless, the January 3, 1997 letter from Aetna to plaintiff upholding the original denial of her claim mentioned Dr. Adolphe's findings. According to this letter, the file was reviewed by a second physician who had not participated in the original decision and he "concurred with the denial decision." The denial letter further stated as follows:

Based on the information provided, it appears you have a migraine disorder. While migraines may be severe, they are seldom disabling for more than a few days. Dr. Vilceus reports that you had repeated negative neurologic examinations. Some days off may have been necessary as sick days but it does not appear you were totally disabled for an extended time period. The psychiatric consult form filled out by Dr. Adolphe does not request a psychiatric disability.

Defs.Ex. Z. This final decision was based upon the medical director's review of plaintiff's August 6, 1996 letter, a history and physical report along with notes from Dr. Theodore, the MRI report, the letter from Dr. Theodore and the reports from Dr. Vilceus. Following Aetna's final determination, plaintiff commenced this action on January 28, 1997.

## Discussion

### Summary Judgment Standards

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). The party must produce specif-

ic facts sufficient to establish that there is a genuine factual issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## Standard of Review

█ The standard of review that the court must apply here is highly deferential to the decision reached by Aetna, the plan administrator. It is undisputed that the Disability Benefits Plan affords Aetna the discretionary authority to determine the eligibility of plan participants for disability benefits. "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [the court] will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Both parties agree that the arbitrary and capricious standard of review applies here.

█ Under the arbitrary and capricious standard of review, this court may overturn a decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] . . . requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995). The arbitrary and capricious standard of review is narrow; "thus [the court is] not free to substitute [its] own judgment for that of [the plan administrator] as if [the court were] considering the issue of eligibility anew." *Pagan,* 52 F.3d at 442. When reviewing a denial of benefits, the district court may consider only the administrative record that was before the plan administrator at the time of the decision. *See Omara v. Local 32B–32J Health*

*Fund,* 1999 WL 184114, at *2 (E.D.N.Y. 1999) (citing *Miller,* 72 F.3d at 1071).

█ Plaintiff contends that Aetna's denial of her claim for disability benefits was arbitrary and capricious because it failed to consider evidence of her depression in addition to her other conditions of migraines and hypertension. Plaintiff does not argue that Aetna's initial determination that her migraines and hypertension alone were not disabling was arbitrary and capricious, but argues that Aetna merely reiterated this determination even though the additional documents she submitted on appeal showed a growing mental disability. Defendants note that it was plaintiff herself who had stated migraines and hypertension as her disabling conditions and that Aetna did consider the doctors' references to depression. These references, defendants argue, merely note a depressive condition and do not diagnose her depression as a disabling mental condition. Moreover, defendants emphasize that the administrative record must be deemed closed as of December 20, 1996, when Aetna reviewed plaintiff's file for the final time, and thus the December 16, 1996 letter with enclosures received by Aetna from plaintiff on December 26, 1996 may not be considered as part of the record. Indeed, defendants state, the closing of the administrative records on December 20, 1996 now prevents them from submitting additional medical proof from their own doctors.

Based upon the administrative record before the court, and even taking into account plaintiff's December 16, 1996 enclosures, Aetna's denial of disability benefits was not arbitrary and capricious. The initial letter informing plaintiff of the denial of her claim may have stated in a somewhat conclusory fashion that her claim had been denied, but informed plaintiff that the denial was based upon a lack of clinical evidence and afforded her the opportunity to appeal the decision and to submit additional medical information for consider-

ation.[1] *Cf. Omara,* 1999 WL 184114, at *3–4 (denying summary judgment where notice of denial did not give specific reasons for the denial or describe any additional information needed to correct deficiency in the claim). Plaintiff responded by submitting additional materials from Dr. Theodore, her primary care physician, and from Dr. Vilceus, her neurologist. However, none of her original doctor's notes nor any of the medical information subsequently provided to Aetna stated that plaintiff was disabled or that she was unable to perform the duties of her job. The initial proof of claim form submitted by plaintiff to Aetna included a section certified by Dr. Theodore; where Dr. Theodore was requested to enter the date "claimant was unable to work because of this disability," the doctor did not indicate a date at all, and, for the date "claimant will be able to perform usual work," the doctor advised that her determination would be based upon a reevaluation of plaintiff in four weeks. Defs.Ex. N. On her first appeal, plaintiff submitted another note from Dr. Theodore, which stated that plaintiff was suffering from "worsening migraine headache and hypertension," and that she was advised to "remain home with bed rest and to follow-up with our office until further notice." Defs.Ex. Q. Again, however, Dr. Theodore never certified that plaintiff was disabled under any given definition, nor that she was unable to perform the duties of her job. The four reports from Dr. Vilceus confirmed plaintiff's ongoing migraines and the prescription of drugs for its treatment, but did not state that plaintiff could not work. Given this record, Aetna's determination that plaintiff's migraines are not continuously disabling and that she had not demonstrated a full disability was not arbitrary or capricious.

Plaintiff's assertion that Aetna failed to consider various references in the medical information documenting a worsening depression is unsupported by the record, and the December 16, 1996 materials alleged to have been excluded by the defendants in bad faith fail to show a certified disability based upon her depression. Aetna's final determination specifically noted that there was a psychiatric consult form included among plaintiff's medical information, but noted also that this form did not indicate a disability based upon a psychiatric condition. *See* Defs.Ex. Z. This psychiatric consult form, filled out by Dr. Adolphe, was among the December 16, 1996 materials that plaintiff contends was timely submitted but which defendants now assert must remain outside of the administrative record. Without deciding whether or not the December 16, 1996 materials were in fact untimely, it should be noted that Aetna twice delayed its final determination by thirty days' time and therefore plaintiff had ample opportunity to submit additional information for consideration. Moreover, it appears that Aetna had in fact reviewed the December 16, 1996 materials and, as also independently corroborated here, nothing in these materials indicates that plaintiff was unable to perform the duties of her job. Plaintiff wishes to reopen the administrative record so that she may now submit additional materials such as contemporaneous doctor's notes to show a disabling mental condition. That plaintiff had the opportunity and the burden to produce such materials at a much earlier point in time, and that defendants have not been shown to have interfered or acted unreasonably or unfairly, compels the court to decline to reopen the administrative record.

1. Under the special comments section of the form letter informing plaintiff of the denial of her claim, the following was included:

   Your request for a certified period of disability has been reviewed by an Aetna Medical Director. Due to lack of clinical evidence, the Medical Director has upheld the denial of your request.

   Reconsideration. If you're appealing your return to work date under the nonoccupational disability plan, you're entitled to a review of this decision.... You'll need to explain your concerns and describe any additional medical information you'd like to have considered.
   Defs.Ex. P.

In short, plaintiff cannot show that defendants acted in bad faith or in an improper manner, *see Kocaj v. Building Service 32B–J Health Fund,* 1998 WL 633662, at \*2 (S.D.N.Y.1998), and there is a rational connection between the facts relied upon and the decision to deny benefits, *see Glavan v. Building Service 32B–J Health Fund,* 1997 WL 381789, at \*3 (S.D.N.Y. 1997). Therefore, the court will not disturb Aetna's denial of benefits and summary judgment is granted in defendants' favor.

## Wrongful Termination and Intentional Infliction of Emotional Distress

 ERISA contains a preemption provision that is "among the broadest that can be found in the law." *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 22 (2d Cir.1996). It provides, in relevant part, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA]." 29 U.S.C. § 1144(a). "[A] state law relates to a benefits plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal quotations omitted). "A state law of general application, with only an indirect effect on a pension plan, may nevertheless be considered to 'relate to' that plan for preemption purposes." *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 (2d Cir.1992) (internal quotations omitted). Generally speaking, a state law will be subject to ERISA's preemptive scope when it either acts solely on ERISA plans or is contingent upon the existence of such plan for its operation. *See Plumbing Indus. Bd. v. E.W. Howell Co.,* 126 F.3d 61, 67 (2d Cir.1997).

Insofar as plaintiff raises state law claims of wrongful termination and intentional infliction of emotional distress, both are clearly preempted by ERISA as a matter of law. *See Yoran v. The Bronx–Lebanon Hosp. Ctr.,* 1999 WL 378350, at \*7 (S.D.N.Y.1999) (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139–40, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)) (state law wrongful discharge claim preempted by ERISA); *Marcella v. Capital Dist. Physicians Health Plan, Inc.,* 47 F.Supp.2d 289, 292 (N.D.N.Y.1999) (intentional infliction of emotional distress claim preempted by ERISA); *Metropolitan Life Ins. Co. v. McNeil,* 1994 WL 665025, at \*1 (S.D.N.Y.1994) (same). Plaintiff conceded as much on oral argument and thus her state law claims are dismissed as well.

### Conclusion

Defendants' motion for summary judgment is granted and plaintiff's claims are dismissed in their entirety. The Clerk of Court is directed to enter judgment dismissing the complaint against defendants Aetna Health Plans and Citibank, N.A.

**SO ORDERED.**