**Malissa BILLINGER, Plaintiff,**

v.

**BELL ATLANTIC, Bell Atlantic as Plan Administrator and Trustee of the Disability and Retirement Plans for Employees of Bell Atlantic, the Disability and Retirement Plans for Employees of Bell Atlantic, Unnamed**

Trustees and Fiduciaries of the Disability and Retirement Plans for Bell Atlantic and Aetna U.S. Healthcare as Plan Administrator and Trustee of the Disability and Retirement Plans for Employees of Bell Atlantic, Defendants.

No. CIV.A.01CIV.4149(CM).

United States District Court, S.D. New York.

Jan. 9, 2003.

275

David M. Rosoff, Law Office of Carton & Rosoff, P.C., Harrison, NY, for Plaintiff.

Malissa Billinger, Mt. Vernon, NY, pro se.

Michael H. Bernstein, Sedgwick, Detert, Moran & Arnold, New York City, for defendant.

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

This is an action concerning claims by the plaintiff for long-term disability benefits under the NYNEX Long Term Disability Plan (the "Plan") issued by Verizon Communications, Inc. ("VERIZON") s/h/a BELL ATLANTIC, BELL ATLANTIC as Plan Administrator and Trustee of THE DISABILITY AND RETIREMENT PLANS FOR EMPLOYEES OF BELL ATLANTIC, THE DISABILITY AND RETIREMENT PLANS FOR EMPLOYEES OF BELL ATLANTIC, UNNAMED TRUSTEES and FIDUCIARIES of the DISABILITY AND RETIREMENT PLANS FOR BELL ATLANTIC, and administered by defendant AETNA LIFE INSURANCE COMPANY ("AETNA") s/h/a AETNA U.S. HEALTHCARE as Plan Administrator and Trustee of THE DISABILITY AND RETIREMENT PLANS FOR EMPLOYEES OF BELL ATLANTIC. The plaintiff made claims for long-term disability benefits to commence on or about March 7, 2000. Plaintiff's claims for long term disability benefits were based upon her allegation that she was unable to work due to her subjective complaints and symptoms of fibromyalgia. However, after a full review of all of the plaintiff's medical proof, her claim for long-term disability benefits was denied. Plaintiff appealed this decision, and AETNA, as Plan Administrator, upheld the denial of plaintiff's request after reviewing all of the medical proof and reports submitted by the plaintiff. AETNA concluded that, while the plaintiff may suf-

fer from the condition known as fibromyalgia,[1] her physical limitations were not debilitating enough to constitute a long-term disability under the Plan.

The well-settled standard of review for a long-term disability claim under an employee benefit plan is the "arbitrary and capricious standard" when the claims administrator is granted discretionary authority to determine eligibility for benefits, as was the case here. Thus, a court cannot disturb the decision of the claims administrator unless it determines that the denial of benefits constitutes an abuse of discretion. After reviewing the record, I conclude that the decision was not arbitrary and capricious, in view of the entirety of the evidence. The determination of the claims administrator, AETNA, was well within its discretion, and was supported by substantial evidence. Plaintiff's related state law claims, alleging promissory estoppel and breach of contract (Counts 4 and 5 of the Complaint) are preempted under ERISA and are also dismissed.

## STATEMENT OF FACTS

The plaintiff[2] was an employee of VERIZON (formerly known as Bell Atlantic and NYNEX) and held a position as a customer service/sales representative. (Ex. B, 00050).[3] She held this position from February, 1991 through February, 1999 at which point she stopped working as the result of her alleged disability. (Ex. B, 00171). As an employee, the plaintiff was entitled to and was afforded benefits under an employee benefit plan issued and funded by VERIZON. (*See* Williams Aff., Ex. A; Scott–Monck Aff. ¶ 2). The claims were administered by AETNA, the Claims Services Provider under the Plan. (Williams Aff. ¶ 3).

In or about the end of February, 1999, the plaintiff stopped working as the result of her alleged disability. (Ex. B, 00171). On April 13, 1999, plaintiff returned to work for approximately two hours. However, due to complaints of pain, she left work permanently. (Ex. B, 00221). Plaintiff has not returned to work at VERIZON since that day. From February 1999 through February 2000, plaintiff received short-term disability benefits and workers' compensation benefits. (Compl. ¶ 11; Ex. B, 00013).

According to plaintiff's Complaint, on or about October 29, 1999, while on short-

---

**1.** Fibromyalgia is a syndrome of musculoskeletal origin but uncertain cause. *O'Sullivan v. The Prudential Ins. Co. of America*, 2001 WL 727033 (S.D.N.Y.2001) (citing *Stedman's Medical Dictionary* 671 (27th ed.2000)).

**2.** Plaintiff is proceeding pro se. She was originally represented by counsel in this matter. Counsel sought and obtained leave to withdraw, claiming that plaintiff had told him she wished different representation and that she was consulting third parties about the case. The Court relieved counsel. When plaintiff was unable to consummate a relationship with a new attorney, she asked that counsel be forced to resume the representation, claiming that I had been misinformed when I was asked to relieve counsel. I sent plaintiff and her attorney to The Hon. Lisa Margaret Smith, United States Magistrate Judge, to determine whether there was any

reason to conclude that counsel had misled me into relieving him in this case or that plaintiff had not understood the tenor of counsel's request. Magistrate Judge Smith advised me that plaintiff fully understood that her lawyer had asked to be relieved and said that there was no basis for countermanding my prior order. *See* Order of The Hon. Lisa Margaret Smith, U.S.M.J. (June 3, 2002) (Docket Sheet Entry 24).

**3.** All references to Exhibits, unless otherwise designated, are made to those documents attached to the Affidavit of Tammy M. Williams, dated March 26, 2002. References to the Administrative Record annexed to Ms. Williams' Affidavit as Exhibit "B", "C" and "D" include page references. The Administrative Record has been Bates numbered for ease of reference (00002–00543).

term disability, plaintiff indicated that she wished to apply for long term disability benefits under the Plan. (Compl.¶ 12.) By letter dated December 22, 1999, AETNA provided plaintiff with several forms and requests for information that it required before AETNA could consider plaintiff's claim for long-term disability benefits. (Ex. B, 00170). The information requested included completion of (1) an Attending Physician's Statement(s)/Mental Health Provider Statement from all of plaintiff's treating physicians; (2) a signed Authorization for Release of Information form; (3) a signed Reimbursement Agreement; (4) completion of the Employment and Education Background form and signed Authorization to Secure Award or Denial Information; (5) completion of Disability Income Questionnaire, and (6) W–4 form. (Ex. B, 00170).

On or about December 29, 1999, plaintiff submitted the required forms with the exception of the Attending Physician Statements from her treating doctors. (*See* Ex. B, 00172–174; 00024; 00150–152). The plaintiff did not specifically identify the nature of her disability. She did state that she could no longer use a computer, telephone, or stand without experiencing pain. (Ex. B, 00172).

AETNA subsequently received Attending Physician Statements ("APS") from plaintiff's primary care physician, Dr. Ira Sutton, dated January 10, 2000 (Ex. B, 00141–142) and her private rheumatologist, Dr. Mark Burns dated February 24, 2000 (Ex. B, 00139–140). These APS's diagnosed plaintiff with fibromyalgia. (Ex. B, 00139, 00141).

AETNA requested an independent medical examination ("IME") of plaintiff which was conducted by Dr. Robert Marini on March 16, 2000. (Ex. B, 00124). In addition, AETNA obtained surveillance video of the plaintiff on March 16, 2000, and a Functional Capacity Evaluation ("FCE") of plaintiff was conducted on May 16, 2000. (Ex. B, 00057–71).

By letter dated June 5, 2000, AETNA denied the plaintiff's request for long-term disability benefits based upon Dr. Marini's independent medical examination, the surveillance video, and the results of the FCE. (Ex. B, 00026–28).

By undated handwritten letter, which AETNA received on June 12, 2000, plaintiff appealed the initial denial of her LTD disability claim stating that she was disabled due to "severe neck problems" that she claimed to have suffered since 1993 and "swelling in left side of [her] neck" and in her ankles. (Ex. B, 00044–48). The plaintiff did not submit additional medical documentation with her request for appeal.

However, AETNA reviewed other medical documentation in plaintiff's claims file, including IME reports prepared by Drs. Mascarenhas and Morrissey. In this regard, on August 30, 1999, in connection with plaintiff's short-term disability claim, Dr. Bento R. Mascarenhas, a rheumatologist, examined plaintiff and concluded that she had elements of psychogenic[4] rheumatism and total body pain, but found no evidence of any significant arthritic disorder. (Ex. B, 00163). He also stated that his examination of plaintiff was limited because of plaintiff's "presumed anticipation of any pain during the examination, however gentle." (Ex. B, 00163). He found that plaintiff was capable of returning to sedentary work part-time starting at 2–hours a day and progressing further. (Ex. B, 00163).

---

**4.** "Psychogenic" means "of mental origin or causation." *Stedman's Medical Dictionary* 1457 (26th ed.1995).

In addition, AETNA reviewed an IME report prepared by Dr. James Morrissey, an orthopedist. On December 16, 1999, plaintiff was examined by Dr. Morrissey in connection to her workers' compensation claim. He also reported that plaintiff's subjective complaints of pain and self-limiting behavior during the examination prevented him from completing a full examination. (Ex. B, 00144–00145). Dr. Morrissey concluded there were "no objective findings of musculoskeletal abnormality and soft mass, left supraclavicular region." (Ex. B, 00144–145). Dr. Morrissey could not certify her disability for workers' compensation. (Ex. B, 00145).

By letter dated June 14, 2000, AETNA acknowledged receipt of the appeal and asked that plaintiff provide any additional documentation that she believed should be considered by AETNA no later than August 5, 2000. (Ex. B, 00029–30). On June 19, 2000, plaintiff submitted a copy of her Notice of Fully Favorable Decision from the Social Security Administration. (Ex. B, 00040).

By letter dated August 18, 2000, AETNA advised the plaintiff that it was adhering to its initial determination denying her claim for long-term disability benefits. The denial was based upon AETNA's Medical Consultant's review of the following information: (1) APS by Dr. Sutton dated 8/11/99; (2) APS's by Dr. Burns dated 12/29/99; (3) IME performed by Dr. Mascarenhas dated 8/30/99; (4) IME performed by Dr. Morrissey dated 12/16/99; (5) IME performed by Dr. Marini dated 3/16/00; (6) Video surveillance tape dated 3/16/00; (7) FCE performed on 5/16/00; (8) Social Security Administration, Fully Favorable Notice of Decision dated 5/23/00; (9) Letter from Dr. Sutton dated 4/11/00; and (10) case notes. (Ex. B, 00018–20).

In arriving at its decision to uphold the denial of plaintiff's claim for long-term dis-

ability benefits, AETNA's Medical Consultant examined all of plaintiff's medical records and reports that were submitted or obtained for review in connection with plaintiff's claim. AETNA adhered to its original denial on the grounds that plaintiff was not totally disabled as defined by the Plan based upon the independent medical examination reports, functional capacity evaluation and surveillance video and reports and, therefore, plaintiff was not prevented from "engaging in *any occupation or employment,* for which [plaintiff is] qualified, or may reasonably become qualified based upon training, education, or experience." (Ex. B, 00018–20).

Plaintiff commenced the instant lawsuit against AETNA seeking long-term disability benefits under the Plan following AETNA's final denial of her long-term disability benefits claim.

## CONCLUSIONS OF LAW

### A. *The Standard for Summary Judgment*

On a motion for summary judgment, the moving party must demonstrate to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. As shown below, the material facts in the instant case are not in dispute.

## B. *The Arbitrary and Capricious Standard Applies Based Upon VERIZON's Grant of Discretionary Authority to AETNA*

■ The Supreme Court has held that "a denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *See also Masella v. Blue Cross and Blue Shield of Conn., Inc.*, 936 F.2d 98, 102 (2d Cir.1991); *O'Sullivan v. Prudential Ins. Co.*, 2001 WL 727033 (S.D.N.Y. June 28, 2001); *Corvi v. Eastman Kodak Co. Long Term Disability Plan*, 2001 WL 484008 (S.D.N.Y. May 8, 2001). When the Plan Trustees are given discretion to determine eligibility, however, the court shall view their decisions with a "strong measure of deference" and may only reverse the administrators' actions if the court finds them to be arbitrary and capricious. *Schwartz v. Newsweek, Inc.*, 827 F.2d 879, 881 (2d Cir.1987); *Seff v. National Org. of Indus. Trade Unions Ins. Trust Fund*, 781 F.Supp. 1037, 1040 (S.D.N.Y.1992); *See also Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir.1995); *Novak v. TRW, Inc.*, 822 F.Supp. 963 (E.D.N.Y.1993).

■ According to Section J of the Plan entitled "Claim and Appeal Procedures," VERIZON (formerly known as NYNEX) delegated to Prudential Insurance Company of America ("Prudential"), the Claim Services Provider, the discretionary authority to make determinations on behalf of VERIZON with respect to disability certifications under the Plan. (Ex. A). In March 1995, AETNA assumed Prudential's role as Claim Services Provider under the Plan. (*See* Williams Aff., ¶ 3; Scott–Monck Aff. ¶ 4). Specifically, the Plan states:

[AETNA] shall determine conclusively for all parties all questions arising in the administration of the Plan. [AETNA] shall have the *sole discretion to interpret and construe the Plan, including, without limitation, determining eligibility for benefits and deciding any question or dispute arising under the Plan.*

(Ex. A, Section J) (emphasis added). By virtue of this language, AETNA had the discretionary authority to determine whether and to what extent employees were entitled to benefits and to grant or deny benefits as it determined appropriate upon reviewing such claims.

When the claims administrator is granted such express discretionary authority to determine eligibility issues, the court "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995). Similarly, in *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir.1995), the Second Circuit held that:

[w]hen an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review differentially a denial of benefits challenged under Section 502(a)(1)(b). The court may reverse only if the fiduciary's decision was arbitrary and capricious, that is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"

*Id.* at 1070 (internal citations omitted).

It is thus clear that the "arbitrary and capricious standard" of review articulated by the Supreme Court in *Firestone* and confirmed by the Second Circuit in *Pagan* and *Miller* applies to this court's evaluation of the plaintiff's claims in this matter

### C. Aetna's Decision Denying Plaintiff's Claim was not Arbitrary and Capricious

 In reviewing the claims administrator's decision under the arbitrary and capricious standard of review, the court must grant significant deference to the claims administrator's determination. *See Schwartz v. Newsweek, Inc.,* 827 F.2d 879 (2d Cir.1987). The court, with appropriate deference to the administrator's determination, must review the Administrative Record to determine if there is any reason to conclude that the denial of benefits was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 1271 (citing *Bowman Trans., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). The administrator's decision to deny benefits may only be overturned if it was, "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler v. First Reliance Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999); *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1271 (2d Cir.1995); *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (citing *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)); *Corvi v. Eastman Kodak Co. Long Term Disability Plan,* No. 01 Civ. 365, 2001 WL 484008, at *5 (S.D.N.Y. May 8, 2001); *Gaitan v. Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Indus.,* 99 Civ. 3534, 2000 WL 290307, at *4 (S.D.N.Y. Mar. 20, 2000); *Kocaj v. Building Serv. 32B–J Health Fund,* 1998 WL 633662 (S.D.N.Y.1998). " 'Substantial evidence' is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] requires more than a scintilla but less than a preponderance.' " *Sandoval v. Aetna Life and Casualty Ins. Co.,* 967 F.2d 377, 382 (2d Cir.1995); *Todd*

*v. Aetna Health Plans,* 62 F.Supp.2d 909 (E.D.N.Y.1999); *Glavan v. Building Serv. 32B–J Health Fund,* 1997 WL 381789, at *2 (S.D.N.Y. July 10, 1997). Moreover, "[w]here both the plan administrator and a spurned claimant 'offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control.' " *Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 92–93 (2d Cir.2000) (quoting *O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir.1995)); *Kocsis v. Standard Ins. Co.,* 142 F.Supp.2d 241, 252 (D.Conn.2001).

 In her Complaint, plaintiff alleges that her request for long-term disability benefits was based upon her "exhibit[ing] symptoms of a neurological disorder in the form of severe pain in the neck and upper extremities" and "fibromyalgia." (Compl.¶¶ 9, 21)(Bernstein Aff., Ex. 1). However, all of the plaintiff's medical records, reports, and the surveillance film were reviewed and considered by AETNA's Medical Consultant in reaching a final determination on plaintiff's appeal. There is ample evidence in those materials to support denial of Plaintiff's claim.

Disability is defined by the Plan as follows:

... sickness, or injury, other than accidental injury arising out of and in the course of employment by the Company, which prevents the employee from engaging *in any occupation or employment,* for which the employee is qualified, or may reasonably become qualified, based on training, education or experience. An employee shall continue to be considered disabled if deemed to be incapable of performing the requirements of a job other than one whose rate of pay is less than 50% of the employee's Base Pay at the time the disability commenced. However,

the Benefits payable in Section D shall not, when added to the amount of wages of such job, exceed 75% of Base Pay.

(*See* Ex. A, ¶ A.5.) (emphasis added).

Pursuant to this definition, the employee must be certified as disabled after a 52–week "Waiting Period." (Williams Aff. ¶ 4; *see* Ex. A, ¶¶ A.4., A.5.). The employee, at all times, must be prevented from engaging in "any occupation or employment" for which he/she is reasonably qualified. In this case, plaintiff was found to be capable of returning to sedentary work based upon all the medical documentation provided to AETNA. Consequently, she was never certified as disabled under the Plan. (Williams Aff. ¶ 4).[5]

As reflected by the Administrative Record (Exs.B, C, D, E), and as further detailed in the Affidavit of Tammy M. Williams, all of the plaintiff's medical records provided to AETNA were evaluated. It is not disputed that the plaintiff's private physicians diagnosed her condition as fibromyalgia, cervical myofascial disorder and lumbar myofascial disorder. However, a reasonable determination was made by AETNA, based upon plaintiff's medical records, IME reports, FCE report and surveillance video that these conditions did not qualify as a disability under the Plan which prevented plaintiff from engaging in "any occupation or employment, for which the employee is qualified, based on training education or experience." (*See* Ex. A, ¶ A.5.). Since the Administrative Record in its totality contained evidence supporting a conclusion that plaintiff could return to sedentary work on at least a part-time basis, it cannot be said that this decision was arbitrary and capricious.

The facts of this case are remarkably similar to those in *Corvi v. Eastman Kodak Co. Long Term Disability Plan,* 2001 WL 484008 (S.D.N.Y. May 8, 2001). In *Corvi,* the court held that the plan's decision to deny long-term disability benefits was not arbitrary and capricious based upon a review of the Administrative Record. Plaintiff Corvi applied for long-term disability benefits, claiming she could not return to work because she suffered from fibromyalgia, myofascial pain syndrome, degenerative osteoarthritis of the cervical spine and lower left cervical radiculopathy. *Id.* at *1. While plaintiff's treating physicians concluded that she suffered from fibromyalgia, the court found that surveillance and other medical information, including reports from an independent medical evaluation, reflected that plaintiff Corvi was "not totally and continually unable to engage in gainful work for which she is reasonably qualified" under the plan. *Id.* at *5. Accordingly, the plan's decision through its claims administrator, Met–Life, to deny plaintiff's application for disability benefits was held not to be arbitrary and capricious.

Here, Billinger, like Corvi, was diagnosed by her treating physicians as having fibromyalgia, cervical myofascial and lumbar myofascial disorder. Although these physicians (Drs. Sutton and Burn) indicated that plaintiff's physical impairment placed her under "severe limitation of functional capacity," other medical information (including the independent medical examinations by Drs. Marini, Mascarenhas and Morrissey), the surveillance report

---

5. That Plan also provides that an employee who has previously been certified as disabled under the Plan can still qualify for LTD benefits if she should return to work in his/her occupation and earn a rate of pay less than 50% of his/her pay prior to disability certification. This portion of the "disability" definition under the Plan appears not to apply in this case—even though some of the medical evaluations suggest part-time work for plaintiff—because the plaintiff was never certified as disabled under the Plan.

and the functional capacity evaluation demonstrated that plaintiff was not totally disabled. Rather, this evidence demonstrated that plaintiff was able to engage in sedentary work on at least a part-time basis.

Even plaintiff's treating physicians did not dispute that plaintiff was capable of performing some sedentary work with accommodation. Specifically, Dr. Sutton, in his attending physician statement dated January 10, 2000, stated that plaintiff could sit and do arm/hand motions for not more than a hour. (Ex. B, 00142). In the Attending Physician Statement completed by Dr. Burns, he noted that plaintiff was incapable of "lifting, carrying, *prolonged* sitting," (Ex. B, 00140) (emphasis added). Indeed, plaintiff's position as sales representative did not require lifting or carrying as a critical demand of the job. Furthermore, with respect to the sitting aspect of her job, plaintiff could take necessary breaks to elevate her body or stretch. (*See* Dr. Marini Report, Ex. B, 00116; FCE Report, Ex. B, 00062).

Furthermore, although not specifically mentioned by AETNA, the Social Security Administration report includes references to additional reports by two medical experts (Drs. Porter and Baum), both of which indicated that plaintiff could perform sedentary work. (Ex. B, 00034–39). Dr. Porter found that plaintiff was capable of "sit[ing]/stand[ing]/walk[ing] for about 6 hours in an 8–hour workday"—considerably more than half time—and could carry up to 20 pounds. (Ex. B, 00037). Dr. Baum found that plaintiff was capable of lifting/carrying up to 50 pounds. (Ex. B, 00037). Both Dr. Porter and Dr. Baum concluded that plaintiff could perform "light-medium exertion level work." (Ex. B, 00037). Thus, it is clear that there was ample proof in the record upon which AETNA concluded that plaintiff was not

"disabled" as that term is defined by the Plan.

Obviously key to the Plan Administrator's analysis were the discrepancies reported concerning plaintiff's physical capabilities throughout the Administrative Record and medical documentation. For example, plaintiff exhibited self-limiting behavior, both during the independent medical exams by Drs. Marini (Ex. B, 00114–116), Mascarenhas (Ex. B, 00154–157) and Morrissey (Ex. B, 00143–146) and during the functional capacity evaluation (Ex. B, 00057–72). The discrepancies in plaintiff's medical documentation are further illustrated by Lori Goldberger, a physical therapist, who reviewed plaintiff's behavior as depicted in the surveillance videotape as compared with plaintiff's performance on the functional capacity evaluation. (Ex. B, 00054–55). When not in a formal testing setting, plaintiff was able to demonstrate: full neck extension to take a drink from a soda can; full cervical range of motion when crossing the street and entering her car; normal gait; ability to lift an object over her head with her right arm; and ability to step up and down a curb without difficulty or support. (Ex. B, 00054–55). (*See* Williams Aff., Exs. D, E) (surveillance tape and pictures). In addition, the surveillance report reflected that plaintiff was able to sit and drive in her car for up to 40 minutes without difficulty. (Ex. B, 00129–134). However, during the functional capacity evaluation (i.e., when she knew she was being evaluated), plaintiff engaged in self-limiting behavior and "excessively slow and guarded movements." (Ex. B, 00059). And when not in a testing situation, plaintiff was able to do many things she suddenly became unable to do once the testing began: sit while filling out most of her paperwork (but could only sit for 30 seconds during the trunk flexion task of the test) (Ex. B, 00058); sit without difficulty, which re-

quires 90 degrees of hip flexion (but demonstrate only 60 degrees of hip flexion during the FCE testing) (Ex. B, 00058, ¶ 1). Plaintiff's heart rate did not increase with complaints of pain, which is not consistent with allegedly higher stress caused by pain. (Exhibit B, 00058, ¶ 2). Plaintiff could not dorsiflex her ankle past 10 degrees on formal testing, (which would cause a gait disturbance), yet she was able to walk normally when she was not aware that she was being observed. (Ex. B, 00058, ¶ 1).

Defendant was permitted to evaluate plaintiff's complaints of pain in light of the totality of her behavior, including the activity on the surveillance tape and during the non-testing parts of her physical examinations that was suggestive of dissembling. The surveillance video depicts plaintiff performing physical activities she claimed she was incapable of performing. AETNA did not discount plaintiff's subjective complaints of pain, but it was well within its rights as Plan Administrator to view Plaintiff's subjective complaints in the context of these inconsistencies.[6]

Based upon a review of all of the medical documentation supplied by plaintiff's treating physicians, the case notes, the reports by Drs. Marini, Mascarenhas and Morrissey, the surveillance report, functional capacity evaluation of plaintiff, and also the Social Security Disability report, AETNA determined that plaintiff was not disabled under the Plan and was capable of returning to sedentary work on at least a part-time basis. While plaintiff's treating physicians concluded that plaintiff's physical capabilities were severely limited, their conclusion does not render AETNA's denial of plaintiff's LTD benefits claim arbitrary and capricious, given the totality of the record.

Plaintiff alleges that the Social Security Administration's decision to grant her social security disability benefits is evidence of a "complete disability" under the Plan. (Compl. ¶¶ 18–19; Bernstein Aff., Ex. 1). While I agree that it is "evidence," it is but one piece of evidence, and is far from determinative. "Social Security determinations are not binding on ERISA plans, and should not have unintended side effects on such plans not contemplated by the parties in initiating the plans, or by Congress in creating the Social Security disability structure." *Pagan v. Nynex Pension Plan,* No. 93 Civ. 1336, 846 F.Supp. 19, 20 (S.D.N.Y.1994), *aff'd,* 52 F.3d 438 (2d Cir.1995); *see also Gaitan v. Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Indus.,* 99 Civ. 3534, 2000 WL 290307, at \*5 (S.D.N.Y. Mar. 20, 2000) (finding that "[a]n ERISA plan's determination on a disability claim that differs from that of the Social Security Administration is not arbitrary and capricious so long as the plan's finding is reasonable and supported by substantial evidence" pursuant to the Plan's documents governing eligibility determinations); *Kocsis v. Standard Ins. Co.,* 142 F.Supp.2d 241 (D.Conn. 2001); *Kunstenaar v. Connecticut General Life Ins. Co.,* 902 F.2d 181 (2d Cir.1990).

The definition of disability to be employed by a benefit plan when evaluating a claim for long-term disability benefits is the one set forth in the Plan documents, not the one used by the Social Security Administration. *Kocsis v. Standard Ins. Co.,* 142 F.Supp.2d 241, 255 (D.Conn.2001) (explaining that "the definition of 'disability' which controls a decision by the Social Security Administration is not binding on the Plan's administrator under ERISA").

---

6. Of greater interest to defendants than to the Court is the contention that plaintiff threatened Dr. Marini and his staff with violence and may have submitted a fraudulent workers' compensation claim. (*See* Defendants' Memorandum of Law 15).

In the instant case, the NYNEX Long Term Disability Plan for Non–Salaried Employees definition controls. (Ex. A). Under the Plan, AETNA, as the Claim Services Provider, was granted discretionary authority to construe the terms and the conditions of the Plan, which includes making the determination concerning whether a claimant, like plaintiff, satisfies the Plan's definition of disability. To constitute a disability under the VERIZON plan, the employee must be prevented from "engaging in any occupation or employment, for which the employee is qualified, or may reasonably become qualified, based on training education or experience." (*See* Ex. A, ¶ A.5.) The definition of disability in the Social Security Act has been described as "more lenient" than definitions similar to the one contained in the Verizon Plan. *Kunstenaar v. Connecticut General Life Ins. Co.*, 902 F.2d 181 (2d Cir.1990); *Pokol v. E.I. du Pont de Nemours and Co., Inc.*, 963 F.Supp. 1361, 1380 (D.N.J.1997).

Thus, a finding of eligibility under the liberal construction of the Social Security Act does not mean that the Plan Administrator acted arbitrarily and capriciously in denying plaintiff benefits under the VERIZON plan.[7]

### D. Plaintiff's State Law Claims Are Pre-empted and Must Be Dismissed

 Plaintiff's claims of promissory estoppel and breach of contract arise under state law. They are, therefore, preempted under ERISA. (*See*, Counts Four and Five of Complaint, annexed to Bernstein Aff. as Ex. 1). ERISA broadly preempts state law claims that "relate to" an employee welfare benefit plan as described by the statute. 29 U.S.C. § 1144(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–8, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The United States Supreme Court in *Ingersoll–Rand* confirmed that a state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan," whatever the state's underlying intent. 111 S.Ct. at 483; *see also Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2d Cir.1992), (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–7, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)); *Todd v. Aetna Health Plans*, 62 F.Supp.2d 909, 915 (E.D.N.Y.1999). Indeed, even state law claims that do not explicitly refer to employee benefit plans, but which merely arise from the administration of such plans, whether directly or indirectly, are preempted. Therefore, "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Smith v. Dunham–Bush, Inc.*, 959 F.2d at 9.

In *Smith v. Dunham–Bush, Inc.*, the Second Circuit held that state law based breach of contract and negligent misrepresentation claims were preempted under ERISA. *Id.* at 8. The plaintiff in that case sought to enforce an oral promise for pension-related benefits allegedly made by his employer. *Id.* at 7. The court found that although the plaintiff had fashioned his complaint in "relating only to his pension benefits, and not to any plan, the existence of [defendant's] pension plan would be a *critical factor* in establishing the extent of liability under state common law." *Id.* at 10 (emphasis added). Furthermore, the civil enforcement provisions of ERISA § 502 "operate to recharacterize state law

---

7. The Court of course expresses no opinion as to what its determination would be under a de novo standard of review.

claims for benefits as actions arising under federal law." *Id.* Although the plaintiff in *Smith* argued that ERISA preemption would leave him with no adequate remedy for his state law claims, the Second Circuit confirmed that plaintiff's sole remedy is specifically provided for in ERISA's civil enforcement provisions. *Id.* at 11. *See also Todd v. Aetna Health Plans*, 62 F.Supp.2d 909, 915 (E.D.N.Y.1999).

Similarly, in the instant matter, plaintiff's state law claims plainly relate to an ERISA-governed plan, *i.e.,* the NYNEX Long Term Disability Plan. Not only do plaintiff's causes of action relate to claims for benefits, they relate to the essence of plan administration. Therefore, all of these claims are preempted and must be dismissed.

 In addition, plaintiff's claims for compensatory damages are also preempted under ERISA and are outside the scope of ERISA's exclusive civil enforcement scheme. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Consequently, plaintiff is limited to ERISA's civil enforcement scheme for appropriate relief.[8]

### CONCLUSION

Defendants' motion for summary judgment is granted in its entirety. The complaint is dismissed. The Clerk of the Court is directed to close the file.

---

**8.** In addition, ERISA's civil enforcement scheme under § 502 does not include either an express or implied right to a jury trial. Therefore, plaintiff's demand for a jury trial is improper. *See DeFelice v. American Int'l Life Assurance Co. of N.Y.,* 112 F.3d 61, 64 (2d Cir.1997).