**Linda MANIATTY Plaintiff,**

v.

**UNUMPROVIDENT CORPORATION, First UNUM Life Insurance Corporation, SBC Group Long Term Disability Plan, UBS Warburg Long Term Disability Plan, UBS AG Long Term Disability Plan (and successors in interest) Defendants.**

**No. 01 Civ.0209 JSR.**

United States District Court, S.D. New York.

Aug. 29, 2002.

Aba Heiman, Scheine, Fusco, Brandenstein & Rada, P.C., Woodbury, NY, for plaintiff.

Louis Michael Lagalante, Gallagher, Harnett & Lagalante, LLP, New York City, for defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On September 23, 1997, plaintiff Linda Manniatty, at that time employed at the Swiss Bank Corporation ("SBC"), underwent back surgery. Thereafter, on January 20, 1998, she ceased working as a result of back pain and applied for disability benefits under the SBC Disability Plan (subsequently replaced by the UBS AG Disability Plan). From January 26, 1998 to July 9, 1998, she received short-term disability benefits and thereafter collected long-term benefits until October 18, 1999, when defendants terminated her benefits on the ground that she was no longer "disabled" under the definition of the applicable benefits plan. After the plan administrator (First UNUM Life Insurance Corporation and its parent, UNUM Provident Corporation, herein collectively referred to as "UNUM") upheld the termination of benefits, plaintiff commenced this action under ERISA, 29 U.S.C. § 1132(a)(1)(B), challenging that determination. By agreement of the parties, the matter is now presented to the Court, on a largely stipulated record, for final determination.

" '[D]enial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator' ... discretionary authority to interpret the plan." *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1254 (2d Cir.1996) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d

80 (1989)). When the administrator has such discretionary authority, the administrator's decision is to be reviewed for abuse of discretion, applying an "arbitrary and capricious" standard. *Sullivan,* at 1254. An exception to such deferential review occurs, however, when the administrator has a conflict of interest and the evidence shows that the administrator was "in fact influenced by the conflict of interest," in which case the denial of benefits should is reviewed *de novo. Id.* at 1256.

■ Plaintiff concedes that the plan here applicable, as evidenced by a 1997 Summary Plan Description ("SPD"), provides the administrator with the kind of discretionary authority that would ordinarily lead to a deferential standard of review. *See* transcript of oral argument of August 8, 2001 ("tr."), at 15.[1] Specifically, page 15 of § 3.2 of the 1997 SPD provides that the plan administrator has "the sole authority to interpret the terms of the insurance policies ... and determine whether benefits are payable, and the sole responsibility for making any benefit payments." *See also id.* § 3.7.[2] Plaintiff argues, however, that UNUM had an "inherent" conflict of interest because it paid beneficiaries from its own assets rather than from the assets of the trust.

However, as plaintiff admits, the existence of such a conflict is not sufficient to alter the standard of review unless the plaintiff can show that the conflict influenced the determination. *See Sullivan,* 82

F.3d at 1255. Plaintiff has wholly failed to meet that burden. Specifically, even after being given repeated opportunities to adduce such evidence, all plaintiff could produce was an indication that, some years after the plaintiff had challenged the termination of her long-term benefits by claiming, *inter alia,* that she now suffered not just from back pain but also from chronic fatigue syndrome, UNUM introduced a plan, growing out of a pilot program in Atlanta, to limit benefits to new customers claiming chronic fatigue syndrome. This does not remotely begin to carry plaintiff's burden to demonstrate that the plan administrators were influenced by a conflict of interest in the prior adjudication of a claim made by a beneficiary of a prior plan.

Accordingly, the Court reviews the administrator's determination under an arbitrary and capricious standard. Specifically, a court may set aside a decision to deny benefits as "arbitrary and capricious" only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (citation omitted). As the *Pagan* court explained: "This scope of review is narrow, [and] thus we are not free to substitute our own judgment for that of the [plan administrator] as if we were considering the issue of eligibility anew." *Id.* *See also Jordan v. Retirement Comm. of*

---

1. Prior to making this concession, plaintiff challenged the admissibility of the SPD on a basis of alleged discovery violations, but after plaintiff's counsel twice conceded in open court that plaintiff was not prejudiced by the violations, *see* tr. at 13–14, the Court overruled the objection. Despite these concessions, plaintiff's counsel subsequently sought reconsideration of that ruling, on no better basis than that he now thinks the introduction of the SPD hurts his case. *See* Plaintiff's Reply to Defendants' Submission, at 1. This

frivolous motion for reconsideration is hereby denied.

2. *See also* the "Plain Facts" section of the revised 1999 SPD: "the plan administrator ... shall have primary authority and responsibility ... to [i]nterpret [the plan's] provisions and construe all of its terms, [e]stablish and enforce.. rules and regulations, [and] determine eligibility the entitlements and amount of benefits that shall be payable."

*Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995).

At a minimum, the administrative record ("AR") of this case shows the following. Until September, 1997, plaintiff worked as a bond trader at SBC. Much of her day was spent sitting, talking on the telephone or doing paperwork. AR 476–479. After plaintiff had back surgery on September 23, 1997, she returned to work, but, as noted above, stopped working on January 20, 1998, complaining of continuing pain in the area where she had had back surgery. She promptly submitted a claim for short-term disability benefits, which was approved and paid until July 1998, when, based on plaintiff's assertion that her back problems persisted, defendants began to pay long-term disability benefits. AR 458, 515, 531–545.

In October 1999, however, UNUM notified plaintiff that it would no longer continue to pay benefits because of a lack of objective evidence of continuing "disability," as defined by the applicable benefits plan. AR 266–267.[3] This initial decision to terminate plaintiff's long-term benefits was based primarily on the administrator's analysis of (a) reports by plaintiff's own doctors, (b) the report of a UNUM representative who met with plaintiff in May 1999, and (c) summary reports by a UNUM reviewing doctor and a reviewing nurse. *See* AR 266–267. With respect to the report of plaintiff's own doctor, one surgeon, Dr. Camissa, thought plaintiff's continuing pain was caused by a "chip in her back"; the surgeon who performed the operation, Dr. Lavyne, described the pain as "residual of nerve injury" and thought the injury would not improve; and a third doctor, Dr. Hart, reported sedentary ca-

pacity. AR 295–96. The UNUM representative noted plaintiff's complaints of pain and inability to sit, but also described "inconsistencies" based on the fact that she did not take pain medication, did not have trouble sleeping, walked two miles every day, and swam three times a week. AR 295–97. Finally, the reviewing doctors and nurse noted that even though Dr. Lavyne performed a number of diagnostic tests, he found no evidence of any muscoskeletical or neurological deficit nor any other disorder that would explain the pain described by plaintiff. The UNUM report found that plaintiff's complaint was therefore "subjective in nature, without objective evidence for continued lumbar dysfunction," AR 266, 280, and, on this basis, concluded that plaintiff was no longer disabled. AR 266–67. Plaintiff appealed.

In her initial appeal, plaintiff submitted a new report from Dr. Lavyne stating that plaintiff's "chronic back pain is disabling her ... [and she is] unable to return to work." AR 247. Yet the surgeon could still not point to any objective evidence supporting plaintiff's pain complaints, and UNUM's reviewing physician thus concluded that the evidence of pain was purely subjective and that there was no reason to reopen the case. AR 244. A Quality Review confirmed this decision. AR 221–22.

Plaintiff then took a final appeal, known as the "Final Administration Review." As part of this appeal, plaintiff claimed, for the first time ever, that, in addition to her back pain, she suffered from chronic fatigue syndrome and fibromylagia, a related illness. Plaintiff submitted, *inter alia*, reports from two new doctors, Dr. Levine

---

**3.** The plan defined " 'Disability' and 'disabled' [to] mean that because of injury or sickness: 1. the insured cannot perform each of the material duties of his regular occupation; and 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings." AR 51.

and Dr. Podell, purporting to support these new assertions, but again the findings were largely based on the plaintiff's own subjective reports. After reviewing all of the records, the reviewing physician noted that plaintiff's "subjective symptoms have consistently exceeded her objective findings," AR 207, and that the purely objective evidence indicated that plaintiff should be able to work an eight-hour day, provided she changed positions and periodically stood and walked, rather than just sit. *Id.* at 207–208. A vocational consultant retained by UNUM essentially agreed with the reviewing physician. *See* AR 191–194. Once again, plaintiff's appeal was denied.

■ Before this Court, plaintiff argues that the foregoing determinations were arbitrary and capricious principally because they placed more reliance on the analyses of the reviewing physicians than on the conclusions of the physicians who actually examined plaintiff and also because they demanded objective evidence when subjective statements of pain should have been sufficient. The former argument really collapses into the latter, however, because the administrator, far from ignoring the reports of the treating physicians, heavily relied on the fact that none of them adduced any objective evidence of plaintiff's complaints. In these circumstances, it was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnoses was based on their acceptance of plaintiff's subjective complaints: an acceptance more or less required of treating physicians, but by no means required of the administrator.

While plaintiff argues that the plan itself does not state that objective evidence is necessary to establish disability, the plan does state that "proof" of continued disability must be provided, AR 64, and the very concept of proof connotes objectivity.

In any event it is hardly unreasonable for the administrator to require an objective component to such proof. *See Bailey v. Provident Life & Accident Ins. Co.,* 3: 99 cv 394/LAC (D.C. Fla. June 13, 2000) ("Although ... subjective information should be considered, ... reliance on such complaints, without more, would result in insurance companies paying virtually all claims ... Therefore, Provident acted appropriately in rejecting Bailey's claim when it found insufficient objective support for a long-term disability claim.").

Thus, given the virtual absence of any material objective evidence to support plaintiff's claim, it can hardly be said that the administrator acted in an arbitrary and capricious matter in rejecting plaintiff's claims. Indeed, even if this Court were to apply a *de novo* standard of review, the same results would follow, for virtually the only objective evidence in the administrative record regarding plaintiff's allegedly continuing back pain is an MRI that showed a "small recurrent disc herniation" in 1998, well before defendants terminated their disability payments to plaintiff. AR 136. All subsequent tests designed to uncover neurological damage were negative (although another of plaintiff's physicians, Dr. Balensweig, did detect some mildly reduced reflexes on plaintiff's left side). AR 1201–1, 126, 132–36, 302, 431–432, 444, 519. This hardly constitutes a sufficient basis for any reasonable conclusion that plaintiff was so disabled as to qualify for long-term benefits, as opposed to being able to return to work under reasonable restrictions and limitations. AR 208.

With regard to the claims of chronic fatigue syndrome and fibromyalgia, the very fact that plaintiff did not raise these alleged ailments under her final appeal—even though she claimed that she had been suffering from both for years, AR 80—is reason for skepticism. Once again, more-

over, there is no material objective evidence of record establishing either ailment, just plaintiff's subjective reports. Without such evidence, the Court would reject these claims even under a *de novo* standard, and certainly it was reasonable for the administrator to do so. *See John v. Noe,* 1998 WL 80199, *5, 1998 U.S. Dist. LEXIS 2016, *16 (S.D.N.Y.1996)

Accordingly, for the foregoing reasons, the Clerk is directed to enter judgment dismissing the Complaint with prejudice and awarding judgment to defendants.

SO ORDERED.