**William F. WILLIAMS, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

No. CIV.A.02–996–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 6, 2003.

Benjamin Weaver Glass, III, Benjamin
W. Glass, III & Associates, Fairfax, VA,
for plaintiff.

Eric W. Schwartz, Troutman Sanders
LLP, Norfolk, VA, for defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

This matter is before the Court on plaintiff's Motion for Judgment on the Administrative Record and defendant's Motion for Summary Judgment. Plaintiff, William F.

Williams, brought this civil action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover short and long-term disability insurance benefits under his employee welfare benefit plan. For the reasons stated below plaintiff's Motion for Judgment on the Administrative Record will be DENIED and defendant's Motion for Summary Judgment will be GRANTED.

## BACKGROUND

Plaintiff, who was 42 years old when he first applied for disability benefits, had been an employee of United Insurance Company of America ("United") since 1983. He was enrolled in his employer's benefit plan with UNUM Life Insurance Company of America ("UNUM") and paid the premiums for this insurance. The employee benefit plan provided for short and long-term disability benefits for United employees. For both short-term disability benefits ("STD benefits") and long-term disability benefits ("LTD benefits"), the plan defines disability as being "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and...a 20% or more loss in weekly earnings due to the same sickness or injury." Administrative Record ("AR") at 25, 59. A claimant who has been on STD for 24 months may qualify for LTD benefits if, as a result of the disability, the claimant is "unable to perform the duties of any gainful occupation for which [the claimant is] reasonably fitted by education, training or experience." AR at 59.

As a sales manager for United, plaintiff traveled by car to people's homes, making presentations about insurance, selling policies, and collecting premiums. In 1999, while employed as a sales manager at United, plaintiff began to experience pain in his knees. After several appointments with his regular doctor, plaintiff was referred to Dr. Jeffrey Alloway, a rheumatologist, in March of 2000. After referring plaintiff for a neurological evaluation and performing physical exams, Dr. Alloway stated he suspected plaintiff was "primarily suffering from some mild arthritis involving his knees and fingers." AR at 333.

On May 23, 2000, plaintiff stopped working and, on June 5, 2000, he applied for STD benefits. AR at 466–467. In his application, plaintiff wrote that the muscles in his legs "were extremely sore as well as [his] hands and feet." He also stated that his legs "gave way" and that he could not walk far without help. *Id.* After reviewing plaintiff's application, UNUM denied plaintiff's claim by letter dated August 4, 2000, explaining that "there is no disability documented by medical evidence." AR at 385–86. Plaintiff appealed this denial on September 22, 2000 and was again denied benefits on January 13, 2001. AR at 308–10, 288–90. On January 23, 2001, ten days later, and nine months after plaintiff resigned from work, Dr. Alloway finally diagnosed plaintiff as suffering from fibromyalgia. AR at 281.

On May 21, 2001, plaintiff's counsel requested that UNUM reconsider the denial of STD benefits. AR at 250–56. On July 26, 2001, UNUM again denied plaintiff's claim, stating that the additional medical records submitted, including Dr. Alloway's diagnosis, were irrelevant to plaintiff's claim because under the plan plaintiff is entitled to benefits if, at the time he stopped working, he was disabled. Therefore, UNUM refused to consider evidence about the progress of plaintiff's condition after May 23, 2000, the date he stopped working. UNUM advised plaintiff that this decision was final. AR at 231–32.

In September of 2001, plaintiff applied for LTD benefits, submitting additional medical records with that claim. AR at

209. On November 20, 2001 UNUM advised plaintiff that his LTD claim was denied. UNUM explained that the medical records included only minimal evidence of osteoarthritis in plaintiff's toes, fingers and knees and these findings did not rise to the level of disability. AR at 110–13. Plaintiff appealed this decision and submitted another letter from his treating physician. AR at 183–84. In that letter, Dr. Alloway stated that plaintiff had "typical bilateral trigger point tenderness in the areas associated with fibromyalgia." *Id.* Plaintiff's appeal was denied on February 25, 2002. AR at 126–28. In that denial, UNUM stated that plaintiff's medical records showed no "objective evidence of impaired knee function as manifested by normal examinations" and that plaintiff's knee condition "would not be considered severe enough to preclude work capacity." AR at 128. On July 10, 2002, plaintiff brought this civil action, seeking judicial review of defendant's denial of benefits.

## DISCUSSION

██ In its Motion for Summary Judgment, the defendant first argues that it is entitled to summary judgment on plaintiff's claim for STD benefits because any STD benefits are payable, if at all, by plaintiff's employer, United, and its parent company, Unitrin. ERISA provides that a beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Several circuit courts of appeals have held that the only proper defendant in such an action is the plan itself. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996); *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1287 (9th Cir.1990). However,

other circuits have held that the party who administers the benefit plan may properly be sued in an action for recovery of benefits. *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir.1998); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988).

Although there is no published decision by the Fourth Circuit on the issue, an unpublished decision suggests that it would permit a suit to recover benefits against the plan itself and any fiduciaries of the plan. *See Gluth v. Wal–Mart Stores, Inc.*, 1997 WL 368625 (4th Cir. July 3, 1997). In *Gluth*, the Fourth Circuit held that the claimant's employer was not a proper defendant because the employer exercised no control over the administration of the plan. *Id.* at *6, n. 8 (citing *Daniel v. Eaton*, 839 F.2d 263).

In the instant case, although plaintiff's employer, United, is listed as the plan administrator in the summary plan documents, all the evidence in the administrative record contradicts that statement. For example, the plan documents state that UNUM will make all determinations of eligibility for coverage, disability, and eligibility for benefits, and adjudicate any appeals of denied claims. AR at 21, 25, 40, 59, 79. Moreover, in a letter to the plaintiff, dated July 11, 2000, UNUM identified itself as the administrator of this benefit plan. AR at 248 ("UNUM administers your company's disability plan."). Based on this evidence, we conclude that, United had delegated to UNUM responsibility for administering its short-term disability benefit plan. UNUM is, therefore, a proper defendant.

██ The standard of review applied by a court examining a denial of disability benefits under ERISA depends upon the discretion afforded by the plan to the ad-

ministrator in determining eligibility. *Gallagher v. Reliance Std. Life Insur. Co.*, 305 F.3d 264, 268 (4th Cir.2002). Where the plan language grants the administrator discretion, the reviewing court must determine if there was an abuse of discretion; otherwise the standard is *de novo*. *Id.* The grant of discretion must be clear, and all ambiguity "is construed against the drafter of the plan, and...in accordance with the reasonable expectation of the insured." *Id.* at 269 (quoting *Bynum v. Cigna Healthcare, Inc.*, 287 F.3d 305, 313–14 (4th Cir.2002)).

 Both the short and long-term disability benefit plans in this case contain the following language: "When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." AR at 737, 777. While conceding that this provision amounts to a grant of discretionary authority to the defendant, plaintiff argues that the Court should apply a modified abuse of discretion standard in this case. Plaintiff correctly points out that, courts are slightly less deferential to decisions by insurance plan administrators where the administrator is also the insurer. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999). However, all that is required under this "modified abuse of discretion" standard is that the Court consider any conflict of interest as a factor in analyzing the reasonableness of the administrator's decision. *See Cothran v. Reliance Standard Life Ins. Co.*, 1999 WL 1092644, *1 (4th Cir. Dec.3, 1999). A court may deviate from the abuse of discretion standard "only to the extent necessary to counteract any influence unduly resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997).

Because United's short-term disability benefits plan is self-funded, UNUM has no apparent conflict of interest when adjudicating claims under that plan. United's long-term disability benefits plan is funded by UNUM. However, having reviewed the entire administrative record, we find no evidence of bias or self-dealing. Therefore, we find that the abuse of discretion standard applies to judicial review of UNUM's denial of benefits. However, even under a *de novo* review, we find the administrative record fully supports defendant's decision.

## A. Short–Term Disability Benefits

 According to the plan documents, plaintiff was entitled to STD benefits if UNUM determined that, at the time he stopped working, he was "limited from performing the material and substantial duties of [his] regular occupation." In the denial letter, dated August 4, 2000, UNUM states that plaintiff's claim was denied because it lacked supporting medical evidence. Having reviewed the entire administrative record, we find that this denial was reasonable in light of the medical records submitted.

In December of 1999, plaintiff was seen by his internist, Dr. Frederick Austin, who noted that plaintiff complained of pain in his knees and legs and that plaintiff felt as if his legs were going to "give away with him." AR at 699. On January 14, 2000, Dr. Austin noted that plaintiff's pain had improved and plaintiff was able to go to Atlanta with his wife and walk for long hours during the day. AR at 670. Despite Dr. Austin's recommendation that plaintiff cancel his neurology appointment, plaintiff was evaluated by Dr. Cynthia Lopez, a neurologist, on February 11, 2000. Dr. Lopez found that, aside from some median mononeuropathy in plaintiff's right wrist, possibly associated with carpal tun-

nel syndrome, plaintiff's neurological exam was normal. AR at 320–34.

Plaintiff was referred to Dr. James Alloway, a rheumatologist. Dr. Alloway's chart notes of plaintiff's treatment from March 10, 2000 through July 31, 2000 contain no support for plaintiff's contention that he was disabled at the time he stopped working. On March 10, 2000, Dr. Alloway noted that plaintiff "probably has a component of patellofemoral [osteoarthritis]" but that he cannot "find any true active inflammatory synovitis in the knees." AR at 331. On April 17, 2000, Dr. Alloway states that he "suspect[s] the patient is primarily suffering from some mild arthritis involving his knees and fingers," but "it does not appear to be inflammatory in nature." AR at 333. Dr. Alloway again referred plaintiff to Dr. Lopez to determine if there was a neurological explanation for plaintiff's pain. After examination on April 19, 2000, Dr. Lopez also found no abnormalities other than "slight tenderness just proximal to the knees." AR at 338. There is nothing in the record to explain why plaintiff became unable to work on May 23, 2000. In his Attending Physician's Statement filed with plaintiff's application for STD benefits, Dr. Austin stated that plaintiff was ambulatory and that his status was unchanged. AR at 465.

These reports by plaintiff's physicians support the conclusion that plaintiff was only suffering some mild pain, possibly from osteoarthritis. However, this evidence does not support plaintiff's claim that he was unable to perform the material or substantial duties of his job as an insurance salesman. He also provided no evidence that his treating physicians had recommended that he stop working.

In response to UNUM's initial denial of plaintiff's claim, Dr. Alloway submitted an additional letter, dated August 23, 2000, in which he stated that plaintiff told him that his job required getting in and out of his car 200 to 300 times a day, and that his knee pain prevented him from continuing with that level of activity. Dr. Alloway also stated that continuing this activity could aggravate plaintiff's condition. AR at 353. Defendant correctly discounted this evidence because Dr. Alloway's opinion about plaintiff's ability to work was premised on plaintiff's inherently incredible statement about the physical demands of his employment. Plaintiff's description of the physical requirements of his job was contradicted by his employer, who described plaintiff getting in and out of his car 200 to 300 times a month, not each day. As defendant points out, assuming that plaintiff got in and out of his car 200 times in a twelve hour day, he would only be spending approximately seven minutes meeting with each customer and traveling to the next call. Moreover, plaintiff's claim contradicts his own statement in his initial application for STD benefits, in which he stated that he gets in and out of a car 100 times a day. AR at 466. Defendant's conclusion as to the physical demands of plaintiff's work was far more reasonable than plaintiff's claim. Therefore, defendant did not abuse its discretion in rejecting Dr. Alloway's August 23, 2000 letter because it was based on plaintiff's suspect claim regarding his work duties.[1]

## B. Long–Term Disability

After plaintiff submitted additional information in September 2001, defendant

---

1. Defendant's letters denying plaintiff's appeals include detailed discussion of the evidence presented by the plaintiff and defendant's reasons for denying the claim. We find that this conclusion is amply supported by the evidence before the defendant at that time, and, therefore, defendant did not abuse its discretion in denying plaintiff's appeals.

reopened plaintiff's case as a claim for LTD benefits on October 3, 2001. At this time plaintiff was only being treated by Dr. Alloway. After reviewing material previously submitted by the plaintiff and supplemental medical records, defendant denied plaintiff's claim. UNUM wrote that plaintiff's medical records contained only "minimal evidence of osteoarthritis and no evidence of neurological disease." AR at 112. Having reviewed the administrative record, we agree that plaintiff's medical record does not support the conclusion that he was disabled within the plan definition.

Plaintiff submitted the report of Dr. Barrie Hurwitz, an Assistant Professor at Duke University Medical Center, who performed a neurological evaluation.[2] Dr. Hurwitz noted the following in his report: "Neurologically he appears normal. The giveaway type weakness at the knees actually indicates very good muscle strength." AR at 273. Plaintiff also submitted Dr. Alloway's report from January 23, 2001, in which Dr. Alloway diagnosed plaintiff with fibromyalgia. AR at 281. In support of this diagnosis Dr. Alloway stated that there were "diffuse tender points on examination." *Id.* In subsequent examinations, Dr. Alloway found "diffuse trigger points tenderness" and "slight tenderness in the anserine area of the right knee," AR at 168, and "diffuse trigger point tenderness but not active swelling," AR at 167.

Dr. Alloway submitted an additional statement with plaintiff's claim, in which he stated that plaintiff cannot squat, bend, kneel, and cannot walk for more than 30 to 45 minutes at a time. AR at 209. Dr. Alloway submitted notes from his follow-up appointment with the plaintiff on October 22, 2001 stating that plaintiff "is moving around the exam room without signifi-

cant difficulty" and has only "[s]light crepitis in the knees with resisted extension but they are not...swollen." AR at 207.

Although Dr. Alloway concluded that the mild trigger point tenderness plaintiff exhibited supported a diagnosis of fibromyalgia, we find no evidence that plaintiff's medical problems rendered him unable to perform the duties of any gainful occupation for which he was reasonably fitted. Plaintiff was apparently able to walk for 30 to 45 minutes at a time, had good muscle strength in his legs, and experienced no swelling of his joints. Therefore, we find that defendant's conclusion that this medical evidence did not support a finding of long-term disability was reasonable and not an abuse of its discretion.

 In his Motion for Judgment on the Administrative Record, plaintiff makes two additional arguments regarding defendant's adjudication of his claim. First, he argues that defendant has abused its discretion by requiring objective evidence of plaintiff's disability because the plan does not require objective medical evidence in support of a claim. This argument has no merit. Although the plan documents do not include the term "objective medical evidence," the plan does require a claimant to submit "proof of [his] claim." AR at 34. Without an objective component to this proof requirement, administrative review of a participant's claim for benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question. Interpreting this plan to require objective evidence of disability is not an abuse of discretion. *See Maniatty v. UNUM Provident Corp.*, 218 F.Supp.2d 500, 504 (S.D.N.Y.2002) ("it is hardly unreasonable

---

**2.** Plaintiff's treating physician, Dr. Alloway, did not refer plaintiff to Dr. Hurwitz. Plain-

tiff apparently sought this additional neurological evaluation on his own. AR at 281.

for the administrator to require an objective component to such proof [of disability]").

Second, plaintiff argues that defendant abused its discretion by substituting the judgment of its reviewing physicians for the opinion of plaintiff's treating physicians. Plaintiff concedes that the Fourth Circuit has not adopted a rule affording deference to treating physicians. *See Elliott v. Sara Lee,* 190 F.3d at 607–08. However, plaintiff argues that, in cases where the modified abuse of discretion standard applies, treating physicians should be afforded greater deference than employees of the plan administrator. *See Hines v. Unum,* 110 F.Supp.2d 458 (W.D.Va.2000). As discussed above, we have found that the unmodified abuse of discretion standard applies in this case. However, even in circuits that apply the "treating physician rule," an administrator can reject a treating physician's conclusions if it provides specific reasons, supported by the record, for doing so. *See Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1139–40 (9th Cir.2001). In this case, the conclusions of plaintiff's treating physicians were based almost entirely on plaintiff's subjective complaints of pain for which there was insufficient objective corroboration. Although a treating physician must accept a patient's subjective complaints, the same is not required of a plan administrator in determining eligibility for benefits. *Maniatty,* 218 F.Supp.2d at 504. Therefore, we find that defendant did not abuse its discretion in reviewing plaintiff's medical records.

For these reasons, defendant is entitled to summary judgment on all of plaintiff's claims. An appropriate Order will issue.