**Ralph MILES, Plaintiff,**

v.

**PRINCIPAL LIFE INSURANCE COMPANY and Venable, LLP Long Term Disability Plan, Defendants.**

**No. 10 Civ. 0702 (VM).**

United States District Court,
S.D. New York.

Dec. 14, 2011.

Kevin Joseph Brennan, Dwyer & Brennan, New York, NY, for Plaintiff.

Steven Paul Del Mauro, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Newark, NJ, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Ralph Miles ("Miles") brings this action against defendants Principal Life Insurance Company ("Principal") and Venable, LLP Long Term Disability Plan (the "Plan," and together with Principal, "Defendants") under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132 *et seq.*, challenging Principal's denial of Miles's claim for long term disability ("LTD") benefits. Miles asserts claims for withheld benefits and declaratory relief pursuant to 29 U.S.C. § 1132(a)(1)(B) and for attorney's fees under 29 U.S.C. § 1132(g)(1). The parties have agreed to forego summary judgment motions in favor of a bench trial on the administrative record pursuant to Rule 52 of the Federal Rules of Civil Procedure, and *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir.2003) (describing summary judgment in ERISA actions "as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact").

The Court now sets forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. As explained below, the Court concludes that Principal's denial of Miles's claim for LTD benefits (the "Initial Determination") and affirmation of that denial on review (the "Final Determination") were neither arbitrary nor capricious. Accordingly, the Court authorizes entry of judgment in favor of Defendants.

## I. FINDINGS OF FACT[1]

### A. MILES'S INITIAL CLAIM FOR LTD BENEFITS

#### 1. *The Policy*

When Miles submitted his claim for LTD benefits to Principal in May 2009, he

---

1. The parties stipulate that any and all evidence taken into account by-Principal when making its Initial and Final Determinations is contained in the documents produced by Principal numbered "Principal–1" through "Principal–940" and "Principal–943" through "Principal–2434" (the "Administrative Record"). All citations in the Findings of Fact

was a 53–year–old commercial real estate attorney who had been employed as a partner at the law firm Venable, LLP ("Venable"). Principal is the issuer and administrator of Venable's group LTD insurance policy (the "Policy"), which covered Miles while he was a partner at the firm.

Under the Policy, a claimant is considered "disabled" if, because of sickness or injury, he is "unable to perform the majority of the Substantial and Material Duties of his ... Own Occupation." (Admin. Rec. at 733.) The Policy defines "Substantial and Material Duties" as "[t]he essential tasks generally required by employers from those engaged in a particular occupation that cannot be modified or omitted." (*Id.* at 726.) To qualify for LTD benefits, a claimant must prove both that he is disabled and that the disability has persisted throughout a 180–day "elimination period." (*Id.* at 685.)

The Policy also provides that "Principal may require a Member to be examined by a Physician ... during the course of a claim;" failure to comply with this requirement may "be cause for suspension or denial of the Member's benefits." (*Id.* at 681.) Finally, the Policy vests Principal with "complete discretion to construe or interpret the provisions" of the policy and "to determine eligibility for benefits." (*Id.* at 722.)

### 2. *Miles's Claim*

Miles filed a claim for LTD benefits on May 5, 2009. In his application, Miles stated that after a ten-month period of hearing loss in his left ear, he was forced to stop working on April 17, 2009 due to the sudden onset of high-frequency noises in both ears (bilateral tinnitus), intractable ear and head pain, and a feeling of disorientation. (*Id.* at 1758.) Miles submitted with his application a statement from his attending ear, nose and throat ("ENT") specialist, Kenneth Etra ("Etra"), which noted these symptoms but reported that their etiology could not be determined. (*Id.* at 1757.) Etra opined "it seems that [Miles] will at the present time be unable to carry on his job." (*Id.*)

Miles described in his application the essential tasks of his occupation:

communicating with others (including lengthy negotiation sessions) in person, by phone, and via computer or Blackberry; reading and understanding complex documents (both paper and electronic); drafting and revising dense and often lengthy documents; memorizing detailed facts; thinking about difficult problems and devising solutions; and supervising the work of associates.

(*Id.* at 1758.) These tasks "had to be done both quickly and carefully, often under significant time pressure, and sometimes late into the night." (*Id.*) Principal does not dispute that these are the essential tasks of Miles's occupation as an attorney and partner in a large-firm commercial real estate practice.

### 3. *Principal's Evaluation Process*

After an August 10, 2009 phone interview with Miles, Principal's claim examiner Diana Norman ("Norman") advised Miles in an August 11, 2 009 letter of the information Principal had received to date.

---

are to the Administrative Record. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir.1995) (requiring courts applying deferential standard of review for ERISA claims to limit review to administrative record, absent good cause to consider other evidence).

While the Court has reviewed and considered the entire Administrative Record and the parties' submissions and oral arguments in this matter, the Court addresses only those portions of the evidence relevant to its factual and legal conclusions.

Norman informed Miles that in order to continue its evaluation, Principal needed contact information for Miles's other physicians, medical documentation to support the severity of his symptoms, and confirmation from his physicians "regarding the specific restrictions and limitations they have imposed, which prevent [Miles] from performing [his] own occupation." (*Id.* at 4410.)

In addition to a statement from Venable confirming his salary and status as a partner, Principal obtained medical records from the following physicians treating Miles's illness: (1) Etra, (2) internist Steven Kobren, (3) neurologist Itzhak C. Haimovic ("Haimovic"), and (4) neurologist Richard H. Blanck. These records included the results of various diagnostic tests as well as correspondences between the doctors. On September 1, 2009, Principal contacted each of Miles's physicians and requested that they answer specific questions about his illness and complete a form known as a "Work Status Sheet." (*Id.* at 582–84.)

On October 26, 2009, Janet Hromatko ("Hromatko"), a nurse employed by Principal, conducted a review of all the documentation related to Miles's claim as of that date. (*Id.* at 2413.) Following the review, Hromatko and Norman agreed that Principal should obtain an independent medical evaluation ("IME") by a neurologist and ENT specialist to review the records and consult with attending physicians Etra and Haimovic. (*Id.*)

In an October 27, 2009 letter, Principal advised Miles of its decision to seek an IME and noted deficiencies in the medical proof submitted on his behalf. Specifically, Principal noted the following: (1) Miles's physicians had not responded to their questions regarding "specific restrictions and limitations" placed upon Miles that would prevent him from continuing to

work as an attorney; (2) Haimovic refused to comment on Miles's disability; and (3) the results of Miles's diagnostic testing, other than the auditory testing, "indicate[d] normal findings." (*Id.* at 620.) Subsequent to this letter, Principal ultimately obtained a "Work Status Sheet" from Etra, which included his response to their questions regarding restrictions and limitations. (*Id.* at 771.)

Principal, through an independent and unaffiliated vendor, enlisted neurologist Bruce LeForce ("LeForce") and ENT specialist Thomas Klein ("Klein") to conduct the IME. Principal declined to have LeForce or Klein perform a physical in-person examination of Miles, despite Miles's attorney having offered to make Miles available. (*Id.* at 9510.) Klein conferred with Etra, but LeForce was unable to confer with Haimovic because Haimovic refused to discuss Miles's illness without authorization. According to LeForce, authorization had been faxed to Haimovic's office on two occasions but "the office continued to indicate that they did not have a release." (*Id.* at 659.) After reviewing the medical records and conferring with each other, LeForce and Klein issued a report (the "IME Report"), which Principal relied on when making its Initial Determination. (*Id.* 655–658.)

While the IME was underway, Miles's attorney responded to Principal's October 27, 2009 letter on November 9, 2009. Miles's attorney argued that Principal had already breached its duty to pay under ERISA's 45–day time limit for processing a claim and that Principal's stated need for "restrictions and limitations" from Miles's physicians was contrary to the language of the Policy. (*Id.* at 654–652.) The letter also requested that Principal allow Miles to review and comment on the IME Report prior to Principal making a determi-

nation on the claim. (*Id.*) Principal did not respond to this letter.

### 4. *Principal's Initial Determination*

On December 8, 2009, Principal sent a letter to Miles denying his claim (the "Denial Letter"). (*Id.* at 755–750.) The Denial Letter identified the information Principal had considered in making its decision and explained that Miles had failed to provide proof demonstrating that, because of sickness or illness, he was "disabled," as defined by the Policy. Principal gave the following reasons for its decision:

- None of Miles's physicians, including Etra and Haimovic, had indicated that they had placed restrictions or limitations on Miles that would prevent him from returning to his occupation. (*Id.* at 754.)

- The IME Report's conclusion that (1) the results of Miles's otolaryngolical and neurological diagnostic testing were normal, other than a test showing left ear hearing loss; (2) there were no objective findings to support impairment from a neurological perspective; and (3) Miles's hearing loss could be helped with a digital hearing aid. (*Id.* at 753–752.)

- Etra's statement to Klein, included in the IME Report, that "the tinnitus was subjective, the vertigo was not a real problem," the headaches and fogginess "were not related to ear, nose, or throat," and that Etra "could not address the disorientation from an otolaryngology prospective [sic]." (*Id.* at 753.)

- Miles's ability to communicate verbally for 45 minutes to an hour over the phone during Principal's interview on August 10, 2009. (*Id.*)

The Decision Letter informed Miles of his right to request a review of the determination and identified information Miles should include to substantiate his claim, such as an explanation from Miles's treating physicians "outlining" the "medical basis" for his "inability to perform [his] own occupation." (*Id.* at 751.)

### B. *THE ADMINISTRATIVE APPEAL*

#### 1. *Miles's Request for a Review of the Decision*

By letter dated September 27, 2010 (the "Appeal Letter"), Miles requested an administrative review of Principal's decision to deny his claim. The Appeal letter set forth Miles's objections to Principal's decision-making process, which are substantially identical to those raised in the present action. (*Id.* at 1209–1199.) Specifically, Miles argued that:

- Since the requirement that Miles's physicians list "restrictions and limitations" was not in the Plan language, Principal had violated its statutory duty to decide Miles'[s] claim in accordance with the terms of the Plan. (*Id.* at 1204.)

- Principal failed to specifically identify the reasons for its conclusion that the evidence did not clearly demonstrate the severity of Miles's impairment. For example, the Decision Letter did not say that Principal "did not believe Miles's complaints" or that it "did not credit the findings and diagnoses made by Miles'[s] treating doctors." (*Id.* at 1207–1206.)

- Principal disregarded or ignored Etra's opinion regarding Miles's inability to concentrate or perform his job. (*Id.* at 1204.)

- Principal incorrectly stated that Miles's claim "did not provide a diagnosis," when in fact Etra had recorded a diagnosis of "sensorial neuro hearing loss … tinnitus … headache." (*Id.*)

- Principal's demand for unspecified objective evidence was unreasonable under the circumstances because tinnitus cannot be measured objectively. (*Id.* at 1205.)
- Principal's observation that a hearing aid would help Miles's hearing loss is irrelevant because the "loss of hearing is incidental" to the claim, and a hearing aid would not help the tinnitus. (*Id.* at 1204.)
- Citing Miles's ability to converse on the phone for an hour about his illness provides "no rational basis to conclude that Miles can perform his extraordinarily demanding occupational tasks." (*Id.*)
- The chronology of events suggests that Principal had determined that it would deny the claim before it received the IME Report. (*Id.* at 1203–1201.)

Miles also submitted additional evidence to Principal obtained after the Initial Determination. Specifically, Miles included: (1) evidence of a vertigo-related fall in February 2010; (2) updated medical reports from Etra and Haimovic, which included the results of a videonystagmography ("*VNG*") test; (3) a report from ENT specialist Michael Gordon; and (4) the Social Security Administration's ("SSA") determination that Miles had qualified for disability benefits. (*Id.* at 1201–1146, 1912–1909.)

### 2. *Principal's Review Process*

After receiving the Appeal Letter and the additional evidence, Principal requested that Miles submit to physical, in-person IMEs by a board-certified ENT and a board-certified neurologist. (*Id.* at 1506–1505.) By way of an October 15, 2010 phone call and letter, Miles told Principal that he refused to appear for the exams. (*Id.* at 1510–1507.) Miles argued that the proposed exams were an impermissible attempt by Principal to "decide the claim anew" because the exams were not reasonably related to Principal's review of its Initial Determination. (*Id.* at 1508–1507.) Miles reminded Principal that he had offered to make himself available for in-person examinations before the Initial Determination but Principal had declined his offer. Finally, Miles said that he would consider a limited request from Principal if he were persuaded that the physical examinations directly related to issues in his administrative appeal. (*Id.* at 1507.)

In response, Principal advised Miles in an October 20, 2010 letter that its own legal department disagreed with his position regarding the in-person exams and alerted Miles to the Policy language regarding Principal's right to request examinations and of the consequences for a refusal to cooperate. (*Id.* 1516–1514). Miles again refused to submit to the in-person examinations.[2]

Principal decided to continue its investigation by having a board-certified neurologist and board-certified otolaryngologist review Miles's entire file and contact Etra and Haimovic to discuss Miles's medical status. After initially objecting to this plan, Miles consented on the condition that Etra and Haimovic have the opportunity to review and comment on the independent medical examiners' summary of their conversations. Miles also requested the opportunity to comment on the independent medical examiners' reports prior to the Final Determination, but Principal refused this request. (*Id.* at 1954.)

**2.** Because Principal continued with its review and did not base its Final Determination on Miles's refusal, the Court will not consider whether Miles was obligated under the terms of the Policy to attend the examinations.

Through an independent and unaffiliated referral service, Principal retained ENT specialist Robert Carpenter ("Carpenter") and neurologist Leonid Topper ("Topper") to conduct the second IME. Both Carpenter and Topper reviewed the entire medical record, conducted conferences with Etra and Haimovic and issued a report (the "Second IME Report"). (*Id.* at 1871–1878, 1866, 1835–1827.) Topper also reviewed Miles's SSA file and issued a supplemental report about the file. (*Id.* at 2313–2308.)

### 3. *Principal's Final Determination*

In a letter dated February 14, 2011 (the "Review Letter"), Principal affirmed its initial denial of Miles's claim on the basis that the medical documentation received did not "support a medical condition that would preclude Mr. Miles from performing his occupation as a large firm commercial real estate attorney . . . ." (*Id.* at 2376.) Following the Final Determination, Miles initiated the present action, alleging that Principal neither based its decision to deny the claim on principled reasoning (*see* discussion above, pages 11–12) nor provided a full and fair review of its decision, as required by ERISA.

## II. *CONCLUSIONS OF LAW*

### A. *STANDARD OF REVIEW UNDER ERISA*

■ ERISA permits a person denied benefits under an employee benefit plan to challenge the denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B); *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). When a plan grants the administrator the authority to determine a claimant's eligibil-

ity for benefits, the reviewing court must apply a deferential standard of review. *See Glenn,* 554 U.S. at 111, 128 S.Ct. 2343.[3]

■ The United States Court of Appeals for the Second Circuit has held that "[u]nder the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126, 132–33 (2d Cir.2008) (internal quotation marks omitted). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Celardo v. GNY Automobile Dealers Health & Welfare Trust,* 318 F.3d 142, 146 (2d Cir.2003) (alterations in original). Where the plan administrator and the claimant offer rational but conflicting interpretations of the plan, the administrator's interpretation must control. *See McCauley,* 551 F.3d at 132. "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, [the administrator's] actions may well be found to be arbitrary and capricious." *Id.* (internal quotation marks omitted).

■ When applying the deferential standard, courts must take into account any conflict of interest that the plan administrator may have. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A conflict of interest is present where the plan administrator is also the insurer. *See*

---

**3.** As stated above. Miles concedes that the Policy vests discretionary-authority in Principal and that the Court must apply the defer-

ential arbitrary and capricious standard of review. (Pl.'s Trial Mem. at 1.)

*Glenn,* 554 U.S. at 113, 128 S.Ct. 2343. While courts must consider any such conflict when reviewing claim denials, it remains "but one factor among many that a reviewing judge must take into account." *Id.* at 115, 128 S.Ct. 2343. The existence of a conflict of interest does not change the standard of review from deferential to de novo. *See id.* Rather, a conflict of interest should act as a "tiebreaker" when other considerations are closely balanced, particularly "where circumstances suggest a high likelihood that it affected the benefits decision, including but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117, 128 S.Ct. 2343. A conflict of interest is less relevant when an insurance company has taken active steps to reduce potential bias and to promote accuracy. *See id.*

■■■ If a plan administrator makes a determination contrary to that of the SSA, a court may consider the contradiction as evidence of arbitrary or capricious behavior. *See Billinger v. Bell Atl.,* 240 F.Supp.2d 274, 285 (S.D.N.Y.2003). But while the SSA determination is "one piece of evidence," it is "far from determinative." *Id.* The standard for reviewing a claim differs between the SSA and ERISA. Unlike in an SSA determination, an ERISA plan administrator need not accord special weight to the findings of a claimant's treating physician over those of an independent medical examiner. *See Suarato v. Building Servs. 32BJ Pension Fund,* 554 F.Supp.2d 399, 423, n. 35 (S.D.N.Y.2008). Ultimately, the question of whether or not a claimant is disabled must be judged according to the terms of the insurance policy at issue and not according to the SSA's definition.

■■■ Finally, under the deferential standard, courts are generally "required to limit their review to the administrative record." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995). A court may look beyond the administrative record only if it finds good cause to consider other evidence. *See Muller* 341 F.3d at 125.

## B. APPLICATION

### 1. Principal's Initial Determination

■■■ Miles asserts that Principal arbitrarily and capriciously denied his claim by (1) failing to apply the Policy's terms to the proof, (2) failing to give specific reasons for its conclusion that Miles's condition was not severe enough to prevent him from working, (3) requiring objective proof of tinnitus, (4) pointing out that a hearing aid would help his hearing loss, and (5) suggesting that Miles's ability to converse on the phone was proof of his ability to work as an attorney. For the reasons discussed below, the Court concludes that Principle's decision to deny Miles's claim was within its discretion.

### a. Reliance on "Restrictions and Limitations"

Miles argues that Principal failed to apply Policy language to the proof when it cited the absence of "restrictions and limitations" as a basis for its denial of his claim, in violation of ERISA section 404, 29 U.S.C. § 1104(a)(1)(D). Miles also argues that it was unreasonable for Principal not to define these terms.

The Court agrees with Miles that the terms "restrictions" and "limitations" do not appear anywhere in the Policy. However, the Court is not persuaded that Principal's use of that phrase amounted to the imposition of a standard not required by the Policy, or that its use violated Principal's duty to apply Policy language to the proof. Principal cited the absence of restrictions and limitations as a basis for its conclusion that the proof submitted failed

to clearly demonstrate that Miles's illness prevented him from performing his own occupation, which is the definition of "disability" under the Policy. Principal did not use the absence of restrictions and limitations, unhinged to language in the Policy, as an independent basis for denying Miles's claim. Rather, Principal considered the absence of restrictions and limitations to be evidence that Miles was not disabled, as defined by the Policy. Therefore, Principal did not impose an additional requirement not contained in the Policy, nor did it fail to apply the terms of the Policy to the proof.

Furthermore, the words "restrictions" and "limitations" are very common in the vocabulary of disability insurance adjudication. *See, e.g., Schlenger v. Fidelity Empl'r Ins. Co., LLC,* 785 F.Supp.2d 317, 327–28 (S.D.N.Y.2011); *Gaud–Figueroa v. Metropolitan Life Ins. Co.,* 771 F.Supp.2d 207, 216 (D.Conn.2011) (noting use of these words by physicians and insurance companies). In fact, these words are used in the regulations governing the adjudication of social security disability claims. *See, e.g.,* 20 C.F.R. §§ 404.1569a, 404.1594. It is clear from the Administrative Record that the phrase "restrictions and limitations" is standard language used on Principal's forms for correspondence with a claimant's physicians. (Admin. Rec. at 771.) Therefore, Principal could reasonably have inferred that Miles's treating physicians would have been familiar with these terms, and thus it was not unreasonable that Principal did not define them.

### b. *Failure to Identify Specific Reasons*

■ Next, Miles argues that Principal failed to identify the specific reasons for its conclusion that the record did not clearly support the severity of his condition and show "significant limitations" to his functioning. (*Id.* at 1207–1206.) Since Etra

opined that Miles was unable to perform his job, Miles argues that Principal should have stated expressly that it did not credit Etra's findings or Miles's complaints. (*Id.* at 1204.)

The Court finds that Principal's Decision Letter did identify several reasons for concluding that the medical records did not "clearly support severity of impairment with significant limitations of function." The Decision Letter supports its denial based on the following reasons: (1) the treating doctors' indication that they had imposed no restrictions or limitations, (2) the normal results of Miles's diagnostic testing, (3) the absence of cognitive testing results demonstrating an inability to concentrate, (4) the absence of positive objective evidence from a neurological or otolaryngological perspective, and (5) the conclusions of the independent medical examiners. (*Id.* at 755–750.) Finally, it was not unreasonable for Principal to fail to expressly state that it did not credit Etra's findings or believe Miles's complaints. In fact, it appears from the Administrative Record that Principal did credit the treating physician's findings, but rather concluded that these findings did not sufficiently demonstrate Miles's disability, as defined by the Policy.

### c. *Demand for Objective Evidence*

■ Miles contends that it was unreasonable for Principal to require objective evidence of his illness because tinnitus, as a general matter, is a condition that cannot be measured objectively. While the Court recognizes the difficulty of proving tinnitus, Principal did not abuse its discretion by requiring additional evidence to support Miles's claim that the tinnitus, in conjunction with his other symptoms, prevented him from working as an attorney. *See Maniatty v. UNUM Provident Corp.,* 218 F.Supp.2d 500, 504 (S.D.N.Y.2002) ("[I]t is

hardly unreasonable for the administrator to require an objective component to such proof."). Miles could have provided, for example, the results of cognitive testing demonstrating his inability to concentrate. Therefore, while Miles's claim may be difficult to prove, it was not unreasonable for Principal to require proof of significant impairment beyond Etra's diagnosis of tinnitus, which was clearly based solely on Miles's reported symptoms.

### d. Other Alleged Deficiencies

■ First, Miles argues that it was unreasonable for Principal to cite his ability to sit through an hour-long phone interview as a basis for its denial. While the Court agrees that the ability to converse on the phone for an hour (with a break and with the assistance of counsel) is extremely weak evidence of Miles's ability to meet the cognitive demands of his job as an attorney, this weak basis was but one among various other much stronger bases supporting Principal's decision.

Second, Miles points out that the Decision Letter incorrectly stated that Miles's claim form "did not provide a diagnosis," when in fact Etra wrote on the form what appears to read "sensorial neuro hearing loss tinnitus ... headache" under the heading "DIAGNOSIS." The Court finds that this mischaracterization in the Decision Letter is hardly indicative of a larger pattern of unprincipled or otherwise arbitrary or capricious reasoning; Etra stated in the application that Miles's symptoms were of unknown etiology, which most likely explains why Principal said that Etra did not provide a diagnosis. The Decision Letter accurately summarized, however, that Etra documented "complaints of left greater than right ear pain with bilateral tinnitus, headaches and the feeling of disorientation." (Admin. Rec. at 755.)

Finally, Miles argues that Principal's observation that a hearing aid would help Miles's hearing loss is irrelevant because the hearing loss is only incidental to his claim. The Court finds that this alleged deficiency, like the other ones asserted by Miles, does not call into question the integrity of Principal's entire decisionmaking process because this was merely one of many sufficient reasons cited for Principal's decision to deny the claim.

### 2. Principal's Final Determination

■ Because the Court concludes that Principal's initial decision to deny Miles's claim was neither arbitrary nor capricious, the Court need only determine whether Principal actually afforded Miles a full and fair review of its initial decision and whether Principal took into account the additional proof submitted during the appeal.

Principal's final review consisted of: (1) a medical record review by an independent ENT specialist (Carpenter); (2) a consultation between Carpenter and Etra; (3) a medical record review by a different independent neurologist (Topper); (4) a consultation between Topper and Haimovic; and (5) a review of Miles's SSA file performed by Topper. In its review, Principal considered and addressed both the proof submitted before the Initial Determination and the additional proof submitted during the appeal.

Principal's Review Letter clearly explains its process for reviewing both Miles's Initial Determination and the additional proof submitted. The Review Letter accurately summarizes the reports from Topper and Carpenter and sets out the doctors' reasons for concluding that there was insufficient objective evidence to support Miles's reported complaints. For these reasons, the Court finds that Principal's review was sufficient and that it was neither arbitrary nor capricious. Finally,

the Court considers the SSA decision and Principal's conflict of interest.

### 3. *The SSA Decision*

 The Court finds that it was not arbitrary or capricious for Principal to reach a conclusion different from the SSA's determination of Miles's disability claim. As described above, while the SSA's determination can inform the Court's review, it is not dispositive. *See Billinger*, 240 F.Supp.2d at 285. Principal noted that the SSA expressly rejected the opinion of its own consultants and instead gave great weight to Miles's treating physicians, as the SSA is required to do under the relevant regulations. Under ERISA, however, there is no such requirement. *See Suarato*, 554 F.Supp.2d at 423, n. 35 ("[B]ecause the [SSA] has a 'treating physician's rule,' and ERISA-governed private pension plans do not, it is not very surprising that a claimant could qualify for Social Security disability benefits, but in the plan administrator's discretion be denied private disability benefits on the same administrative record."). Here, Principal properly considered the SSA's determination but declined to give it dispositive effect.

### 4. *Conflict of Interest*

Since Principal is both the insurer and administrator of the Policy, a conflict of interest exists. *See Glenn*, 128 S.Ct. at 2349–50. The record reveals that Principal took active steps to remove potential bias and Miles presents no evidence that Principal has a history of biased claim adjudication. On the record as a whole, the Court is persuaded that the evidence before it is not so closely balanced that a conflict of interest could be considered a tiebreaker. In fact, the Court is satisfied that the evidence weighs significantly in Principal's favor. Therefore, the Court finds that Principal's conflict of interest did not render its otherwise satisfactory decision-making process arbitrary or capricious.

Accordingly, though mindful of the unfortunate medical and professional consequences of Miles's condition, the Court finds that Principal's denial of his disability benefits was neither arbitrary nor capricious.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Clerk of the Court is directed to enter judgment dismissing the complaint of plaintiff Ralph Miles.

**SO ORDERED.**